| | | |
|---|---|---|
| **RICHARD A. ARENA, JR., d/b/a** <br> **Water-Tite Roofing** | : | **DOCKET NO. 2:05-CV-919** |
| **VERSUS** | : | **MAGISTRATE JUDGE KAY** |
| **GRAYBAR ELECTRIC CO., INC.,** <br> **et al** | : | |

## FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

This is a claim by plaintiff Richard A. Arena, Jr., d/b/a Water-Tite Roofing (Arena) against Graybar Electric Company, Inc. (Graybar) and Stevens Land and Construction, LLC (Stevens) for amounts Arena claims he is owed by the defendants for services provided. Following a bench trial, the Court allowed the parties to make their closing arguments in writing.

Having received and considered the parties' closing arguments and having reviewed the evidence presented at trial, including all exhibits and the testimony of all witnesses, the Court now issues its findings of fact and conclusions of law pursuant to Rule 52(a) of the *Federal Rules of Civil Procedure*[1] and, considering the law to be in favor thereof, the court finds that defendants are liable *in solido* to the plaintiff for the amount of $163,295.00 plus interest as provided under Louisiana law from May 25, 2005, until paid, and all costs of this proceeding.

### FINDINGS OF FACT

(I)

Defendant Graybar Electric Co. was hired as a principal contractor by the United States Government to re-roof certain on-post military personnel housing located at the United States

---

[1] To the extent that a finding of fact constitutes a conclusion of law, the Court adopts it as such and to the extent that a conclusion of law constitutes a finding of fact, the Court also adopts it as such

Army base at Ft. Polk, Louisiana ("North Fort Reroofing Project"). Graybar received $2,500,000 for this project. See Exhibit P-2; Doc. 36, pp. 6, 53, 82.

(II)

Ricky Carver was the Quality Assurance inspector (QAI) for the Government on the project. Graybar would not be paid for work on the project unless that work was approved by Carver. Doc. 36, pp. 65, 80-81, 90, 164-65, 165.

(III)

Graybar contracted with Stevens Land and Construction LLC (Stevens) to assume responsibility for the North Fort Reroofing Project. Stevens was to receive $2,054,025 under its contract and was paid its money. Exhibit P-3, Doc. 82. Stevens was hired after an entity known as Arrhowhead had been hired but soon "run off" because "their work really wasn't up to standards". Doc. 36, pp. 8-10.

(IV)

Kurk Kuhlow was the supervisor and quality control supervisor for Arrowhead and later Stevens over the roofing project in North Fort housing. His job was to inspect for Stevens and then turn the work over to Carver for inspection. Doc. 36, pp. 8-10.

(V)

Stevens had little experience in roofing and hired plaintiff to be the primary roofer on the project with only approximately 2% of the roofing done being handled by someone other than plaintiff. Doc. 36, pp. 11-12.

(VI)

There was no written contract between Arena and Stevens or Arena and Graybar; however there clearly was an understanding that Arena would perform roofing services for a particular price at the North Fort housing.

(VII)

While performing under the agreement it was discovered that additional work, beyond what was originally contemplated, was required as tar used by previous maintenance workers had damaged stucco, flashing, and vents that required replacement or repair.  Doc. 36, pp. 23-24.

(VIII)

Also QAI Carver imposed requirements on Arena that were beyond that which was contemplated by the original agreement to perform the required roofing replacement.  Doc. 36, pp. 14, 17, 18, 19, 20, 22, 24, 25, 27, 28, 30, 31, 44-45, 49, 78, 87.

(IX)

Representatives of Stevens and Graybar instructed Arena to perform the extra work necessitated by the tar damage as well as the requirements of QAI Carver, Carver's requirements being characterized by all witnesses as unreasonable and arbitrary.  Doc. 36, pp. 17, 24-25, 30-32, 44-46, 49, 62, 63, 65, 88, 91, 92, 96, 97, 99-100, 118, 119, 140-144.

(X)

Representatives of Stevens and Graybar knew that Arena was performing services above and beyond that which was anticipated at the time the original agreement was made.

(XI)

The work performed by plaintiff was satisfactory.  Doc. 36, p. 37, 59, 68-69, 73, 84.

(XII)

Areno was paid less than $1,000,000 for services performed on this project. Doc. 36, p. 87.

(XIII)

Representatives of both Stevens and Graybar testified at trial that plaintiff was not paid for the extra work necessitated by the tar damage or Carver's demands and that plaintiff should be paid for those services. Doc. 36, pp. 31, 42, 68-69, 70, 76, 85, 86, 87, 88.

(XIV)

The amount claimed by plaintiff, a total of $163,295.00, is reasonable under the circumstances and includes plaintiff itemized his charges as follows:  1) $46,799 for additional lull walkers and equipment; 2) $1,879 for additional roof vents; 3) $4,627 for the repair of stucco walls damaged by tar; 4) $56,145 dollars for additional safety wire purchased, installed, and removed from the housing; and 5) $53,845 for removal of existing tar and damage done to multiple roofs. Plaintiff's Exhibit 6. The reasonableness of these charges was corroborated by the testimony of Kurk Kuhlow, defendant Stevens's supervisor over the job. Doc. 36, p. 38

## CONCLUSIONS OF LAW

(I)

Originally plaintiff sued under the Miller Act, 40 U.S.C. § 3135, affording jurisdiction to the court pursuant to 28 U.S.C. § 1331. At inception of the trial, counsel for plaintiff conceded that defendants never secured a bond as required by the Miller Act and that plaintiff was proceeding pursuant to applicable Louisiana state law claimed in the original complaint. After trial, plaintiff was allowed to amend his complaint to allege diversity that existed at the time of

the filing of his original complaint.  Doc. 48.  Accordingly, this court has jurisdiction pursuant to 28 U.S.C. § 1332.

(II)

Louisiana substantive law provides the rules of decision in this case.  Under the *Erie* doctrine, federal courts sitting in diversity must apply state substantive law and federal procedural law.  *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996) (citing *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)).

(III)

In diversity cases, the issue of interest, both pre- and post-judgment, is controlled by state law. Thus, state law dictates not only the entitlement to interest, but the rate of interest as well. *Home Life Ins. Co., New York v. Equitable Equipment Co.,* 694 F.2d 402, 404 (5th Cir.1982).

(IV)

Under Louisiana law, "[a] contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished."  LA. CIV. CODE ART. 1906.

(V)

Actions or inactions of parties may clearly indicate consent to contract although no writing or oral agreement exists.  *Morphy, Makofsky & Masson, Inc. v. Canal Place*, 538 So.2d 569, 573 (La. 1989); *Fairbanks v. Tulane Univ.*, 731 So.2d 983, 986

(VI)

A non-written contract has the same legal effect as an express, written agreement. *Morphy*, 538 So.2d at 573; *Larose-Perniciaro Corp. v. St. Bernard Parish Water and Sewerage Com'n*, 648 So.2d 432, 436 (La. App. 4 Cir. 1094).

(VII)

Such a contract is valid despite the absence of terms specifying the amount of remuneration. *Morphy*, 538 So.2d at 574. See also *Bordelon v. Comeaux Furniture*, 705 So.2d 740 (La. 1998) (*per curiam).*

(VIII)

Where there has been no price agreed upon, the party performing services must be paid a reasonable sum to be determined by the court, which reasonable sum can include actual costs, general overhead attributable to the project, and a reasonable profit. *Morphy*, 538 So.2d at 575; *Tallulah Constr., Inc. v. Ne. La. Delta Cmty. Dev. Corp.*, 982 So.2d 225, 233 (La. App. 4 Cir. 2008).

(IX)

An obligation is solidary for the obligors when each obligor is liable for the whole performance. LA. CIV. CODE ART. 1794

(X)

Although the words "in solido" may not appear in the contract, agreement or obligation, it is sufficient if all of the elements of an obligation in solido are present. *Moreland v. Green,* 501 So.2d 975 (La. App. 2 Cir. 1987); *Dodd v. Lakeview Motors, Inc.,* 149 So. 278 (La. App. 2 Cir. 1933). The co-extensive obligations for the "same thing" create the solidarity of the

obligations. *Narcise v. Illinois Cent. Ry. Co.,* 427 So.2d 1192 (La.1983); *Frank's Door & Bldg. Supply, Inc. v. Double H. Construction Co., Inc.,* 459 So.2d 1273 (La.App. 1 Cir. 1984).

## CONCLUSION

Applying the facts adduced at trial to the applicable law this court can reach no conclusion other than that plaintiff had a contract, albeit an oral one, with both defendants to perform the additional services represented in Plaintiff's Exhibit 6. Although there was some contradiction among the witnesses about who exactly should compensate plaintiff for the extra services performed, there was no contradiction among any of the live witnesses that (1) the work was done, (2) the work was done satisfactorily, (3) if the work had not been done, no one would have been paid, (4) both defendants knew plaintiff was doing the work, (5) both defendants were paid, (6) plaintiff was not paid for the extra work.

Defendants argue in their post-trial memorandum that plaintiff fails to describe the "extra work" represented by each invoice with sufficient specificity to support his claim. Defendants cite *Jackson v. Spurlock*, 424 So.2d 1088, 1089 (La. App. 1 Cir. 1982) for the proposition that a contractor must prove the value of the services that he claims to have rendered. Defendants also cite *Fullerton v. Scarecrow Club, Inc.*, 440 So.2d 945, 949 (La. App. 2 Cir. 1983) for the proposition that a claim must be proven with more than bare, unsupported assertions of the amount due.

This court finds that the information provided by the plaintiff through testimony and by documentation was more than adequate to support his claim for sums due to him. The testimony as a whole leads this court to the conclusion that, while services were being performed, plaintiff was encouraged by both defendants to carry on and cater to the caprice of QAI Carver with a

clear understanding that eventually he would be compensated. It was only after the project was complete, after both of the defendants received their money, that the defendants suddenly were expecting a heretofore lacking level of exactitude from the plaintiff, refusing to make plaintiff whole without details previously ignored.

As the court noted at close of evidence, defendants made no effort in the years following this project to discover any particulars about plaintiff's services and have instead relied on some nebulous notion that they simply do not owe plaintiff for his work, despite their recognition that he performed the work and he had not been paid. The testimony of the representatives of the defendants was crystal clear when it involved any issue other than how the plaintiff was to be paid and by whom. It was only at that point that their testimony became hazy and ephemeral, the two defendant representatives seeming somewhat befuddled while blithely contemplating how plaintiff's recompense should transpire since each obviously was of the position at trial that plaintiff's loss was simply not their problem. This court is convinced from having heard the testimony and observed the demeanor of these witnesses that authorized representatives of each defendant separately assured plaintiff he would be compensated for the extra services being performed.

This court found the testimony of the plaintiff to be exceedingly credible. Mr. Arena described in expressive detail the disappointment he endured being passed from one of these defendants to the other attempting to collect for the services that he so clearly performed. Of particular concern to this writer is the fact that both defendants were well aware of Carver's proclivity to impose arbitrary requirements was known to defendants Graybar and Stevens before Arena agreed to the project but Arena was never told before he agreed to provide the services.

Plaintiff took greatt pains to keep his emotions in check while describing the difficulty of attempting to service this particular project while being bombarded by Mr. Carver's capriciousness that added nothing to the quality or safety of his performance but that nonetheless were heeded so that the defendants could be paid under their respective written agreements. But deal with it plaintiff did only to have his requests for payment ignored.

Having found the existence of a contract to perform these extra services, having found that each defendant instructed plaintiff to perform the extra work, having found that the work was performed satisfactorily, and having found that the amount claimed by plaintiff is reasonable, the court thus concludes that there should be judgment herein in favor of plaintiff and against defendants, *in solido*, in the full amount of $163,295.00, with legal interest at the rate allowed by Louisiana law since date of judicial demand until paid and all costs of this proceeding. Counsel for plaintiff is instructed to prepare a judgment accordingly.

DONE AND SIGNED in Lake Charles, Louisiana, this 31st day of March, 2010.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE