UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

RICHARD ARENA JR. d/b/a       :        CIVIL ACTION NO. 2:05-CV-919
WATER-TITE ROOFING

VERSUS                   :

GRYABAR ELECTRIC CO., INC., ET    :       MAGISTRATE JUDGE KAY
AL

## MEMORANDUM RULING

This matter is currently before this court on remand from the United States Court of Appeals for the Fifth Circuit.  Doc. 87.  In its ruling the Fifth Circuit vacated this court's decision denying defendants' post-trial motion for a new trial and remanded finding that we incorrectly determined that we exercised supplemental jurisdiction over plaintiff's substantive state law claims.

In the original complaint, plaintiff ("Arena") alleged violations of state law and of the Miller Act, 40 U.S.C. § 3131, *et. seq.*  At the beginning of trial counsel for plaintiff conceded that defendant had not secured a bond as required by § 3131 and the Miller Act claim was dismissed.  The matter proceeded to trial and the court found in favor of plaintiff.  Doc. 56.

Defendant Stevens Land & Construction LLC filed a Motion for New Trial and a Motion to Dismiss claiming the court lacked subject matter jurisdiction.[1]   Doc. 62.  This court found that we maintained supplemental jurisdiction over Arena's state law claims after his claims under the Miler Act were dismissed.  *See* Doc. 67.  After trial Arena was allowed to amend his complaint in order to allege that diversity jurisdiction existed at the time of the original

---

[1] Defendant Graybar Electric Co. Inc. eventually joined in the motion to dismiss.  Doc. 96.

complaint. [2]  Doc. 48.  On these grounds, the court found that it had jurisdiction under § 1332. Doc. 53.

In its memorandum supporting its motion for a new trial and dismissal, defendant objected to the finding of diversity jurisdiction and submitted an unauthenticated document they claimed to be proof of Arena's Louisiana citizenship.  Citing *Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167 (5th Cir.1990) and balancing "the need to bring litigation to an end" against "the need to render just decisions on the basis of all the facts," this court refused to consider this evidence.  *See* Doc. 67 at n.1.  In its mandate, the Fifth Circuit instructed this court to "review[] the evidence, validat[e] its authenticity, and determin[e] its [e]ffect on jurisdiction." Doc. 87, p. 14.  The Fifth Circuit determined that this court's jurisdiction over Arena's state law claims is proper if diversity jurisdiction was proper at the time Arena filed his lawsuit.  *Id.* at 10-11.

In accordance with the mandate, this court issued an order requesting that the parties submit evidence relevant to the issue of subject-matter jurisdiction at the time suit was filed. Doc. 104.  Arena has filed an affidavit and documents in support of his contention that at the time suit was filed he was a citizen of the State of Texas.  Thus, he maintains that the evidence supports a finding that complete diversity existed when the suit was filed.  Conversely, defendants maintain that the evidence shows that plaintiff was a citizen of the State of Louisiana at the time suit was filed and they claim that plaintiff has failed to meet his burden of showing that he changed his domicile to the State of Texas.

---

[2] Arena's amended complaint alleges that at the time suit was filed he was a citizen of Texas, defendant Stevens Land & Construction was alleged to be a citizen of Louisiana and defendant Graybar was alleged to be a citizen of New York and Missouri.  Doc. 48.

After considering all responsive briefs,[3] this court concludes that the evidence supports a finding that complete diversity existed at the time suit was filed and jurisdiction over plaintiff's claims was proper under 28 U.S.C § 1332.

### Law and Analysis

Federal Courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).  They possess only that power authorized by Constitution and statute.  *Id.*  Congress has bestowed original jurisdiction in federal district courts for all civil matters where the parties are citizens of different states and the amount in controversy exceeds $75,000.00.  *See* 28 U.S.C. § 1332.  When diversity of the parties is at issue, it must be shown by a preponderance of the evidence that diversity existed when the action was commenced.  *See Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 813 (5th Cir.2007); *Coury v. Prot*, 85 F.3d 244, 251 (5th Cir.1996).

For purposes of diversity jurisdiction, an individual's "citizenship" and his or her "domicile" are synonymous.  *Hendry v. Masonite Corp.*, 455 F.2d 955 (5th Cir.1972).  While state law may provide guidance, the question of a person's domicile is a matter of federal common law.  *Acridge v. Evangelical Lutheran Good Samaritan Soc'y*, 334 F.3d 444, 448 (5th Cir.2003) (citing *Coury*, 85 F.3d at 248; 15 *Moore's Federal Practice* § 102.34(3)(a) (3d ed. 2001)).  A person acquires a "domicile of origin" at birth, and this domicile is presumed to continue absent sufficient evidence of change.  *Id.* (citing *Palazzo v. Corio*, 232 F.3d 38, 42 (2d Cir.2000)).  There is a presumption of continuing domicile that applies whenever a person relocates.  *Id.* (citing *Coury*, 85 F.3d at 250).  In order to defeat the presumption and establish a

---

[3] Plaintiff filed a memorandum and affidavit in support [doc. 105], defendant Graybar filed an opposition [doc. 112], and plaintiff filed a reply [doc.115].  Defendant Stevens Land and Construction, LLC submitted a letter dated September 26, 2013 [doc. 116] wherein it states that it failed to timely submit a brief but fully adopts the opposition filed by Graybar.

new domicile the person must demonstrate both (1) residence in a new state, and (2) an intention to remain there indefinitely. *Id.* There is no durational residency requirement in the establishment of domicile; once presence in the new state and intent to remain are met, the new domicile is instantaneously established. *Id.* (citing 15 *Moore's* § 102.34(3)(a)).

In determining whether a person has changed his (or her) domicile, courts have looked to many factors. *Acridge*, 334 F.3d at 448 (citing *Coury*, 85 F.3d at 251). These factors include the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family. *Id.* The court should, when undertaking this examination, weigh all factors equally; no single factor is determinative. *Id.* In addition to these factors, courts are to consider "all evidence" that sheds light on a party's intent to establish domicile. *Coury*, 85 F.3d at 251. Finally, "statements of intent, either to remain in a previous domicile or to establish a new one, are entitled to little weight if they conflict with the objective facts." *Id.* (internal quotations omitted).

Jurisdiction in this case hinges on one question: was Arena domiciled in Texas or Louisiana when this action was filed? If the answer is Texas, then complete diversity among the parties existed and the court enjoyed subject-matter jurisdiction; if the answer is Louisiana, we did not.

It is uncontested that for a period of time prior to May 25, 2005, the date suit was filed, Arena's domicile was Louisiana. Therefore, it is presumed that Louisiana continued to be his domicile, unless he can show by a preponderance of the evidence that he changed his domicile to Texas. We find that Arena has met his burden of establishing a change of domicile and that he was domiciled in Texas at the time this suit was filed.

We will discuss the many factors that led to this determination but must first address the argument made by defendants that it is too late for plaintiff to prove that complete diversity existed at the time of filing suit and we should not allow him to present additional evidence on this issue.  *See* Doc. 112, p. 3.  Citing the case of *Level 3 Communications, LLC v. City of St. Louis, Missouri,* 2007 WL 2860171 *3 (E.D. Mo. Sept. 25, 2007), defendants argue that a party who fails to submit essential evidence at trial has made a fatal error and cannot be allowed to re-open the evidence to cure this defect.  *Id.*  Defendants suggest that the only evidence properly before the court is an unauthenticated voter registration form that was submitted to the court as an exhibit to its post-trial motion for a new trial.[4]

In *Level 3 Communications*, the appellate court reversed and remanded the district court's judgment granting a motion for summary judgment.  On remand, the party whose judgment was overturned moved to re-open discovery so as to supplement the record.[5]  The opposition argued that remand should not give parties an opportunity to correct a deficiency in the evidence.  The court agreed with the opposition stating that while the decision of whether or not to permit additional evidence was within its discretion, it would not allow it in this instance.  The court determined that all relevant evidence concerning the motion for summary judgment had been presented to the court and to permit additional discovery would "render meaningless the discovery deadlines previously imposed."  *Id.* at *5.

Initially we note that *Level 3 Communications,* a case out of the Eastern District of Missouri, has no precedential effect and is not binding on this court.  Furthermore, in the present case, unlike *Level 3 Communications*, the motion for a new trial based on lack of subject-matter

---

[4] Although the defendants urge the court not to consider any other evidence, they nonetheless submit as an exhibit to their opposition a certified copy of the voter registration and other evidence they contend shows that plaintiff was domiciled in Louisiana at the time of filing suit.
[5] The discovery deadlines in this case had expired by two years.

jurisdiction was a post-trial motion and other than an unauthenticated voter registration card, this record contains no evidence of any suggestion of lack of diversity jurisdiction.  This court's decision to allow both parties an opportunity to present evidence regarding jurisdiction was clearly within its discretion.  In *Coury*, the Fifth Circuit stated, "[i]n making a jurisdictional assessment, a federal court is not limited to the pleadings; it may look to any record evidence, and may receive affidavits, deposition testimony or live testimony concerning the facts underlying the citizenship of the parties.  The court has wide, but not unfettered, discretion to determine what evidence to use in making its determination of jurisdiction."  *Coury* 85 F.3d at 249.  For these reasons, we reject defendants' argument that the court should not allow additional evidence of domicile.

We now turn to the facts upon which this court bases its opinion that Arena was domiciled in the State of Texas on May 25, 2005, the date suit was filed.

Arena has submitted, among other things, a sworn declaration stating that he was born and raised in Benbrook, Texas and has lived there permanently except for a period of time between the years 1999 and 2003.  Doc. 105, att. 1.  During these years, he moved to Lafayette, Louisiana which was his wife's hometown.  *Id.*  He and his wife divorced in October 2002 but he remained in Lafayette until sometime in late 2003 when he returned to his hometown of Benbrook.  *Id.*  He submits that he has continued to reside in Benbrook since late 2003 and intends to remain there permanently and indefinitely.  *Id.*  Despite the fact that he returned to his hometown in 2003, he states that he maintained an apartment in Lafayette in order to facilitate visitation with his two minor children who were under the domiciliary custody of their mother.  *Id.*  He states that he had no other family in Lafayette and had no intention of continuing to reside there.  *Id*

In his declaration Arena states that by the end of 2003 he was spending ninety-five percent of his time in Benbrook where he had set up and was running his business Water-Tite Roofing.  *Id.*  From 2003 to 2004 he worked as a subcontractor for Quality Tops Roofing, Inc. roofing homes in the Fort Worth area.  *Id.*  Arena states that since returning to his hometown of Benbrook he has not resided anywhere else.  *Id.*  He states that on May 25, 2005, he was a resident of Benbrook and had intentions of residing there on a permanent basis.  *Id.*

These statements of intent should only be disregarded if the objective facts indicate otherwise.  This court finds that they do not.

Defendants filed a memorandum in opposition to Arena's submission of evidence.  Doc. 112.  Defendants argue that Arena has failed to meet his burden of proving that he changed his residence to Texas.  They argue that other than his "self-serving testimony" Arena has not produced any documentary evidence that he voted in Texas, had a Texas driver's license, paid taxes in Texas, owned property in Texas, was employed in Texas, maintained bank accounts in Texas, or belonged to clubs or a church in Texas.  *Id.* at 4.  They point to a single document, a certified copy of Arena's Voter Registration, which they claim shows that he was registered to vote in Louisiana in 2005.  *Id.* at att. 1.  Defendants maintain that the Voter Registration which lists his address as 102 El Dorado Court in Lafayette, Louisiana indicates that it was "last changed" on September 8, 2005 and "last confirmed" on September 30, 2005.[6]  *Id.*  Thus, they submit that he was a resident of Louisiana at the time suit was filed.

Arena was questioned in his deposition about the Voter Registration. [7]  When he was asked if her ever registered to vote in Louisiana he replied, "I don't believe so.  I mean I did change my driver's license to a Louisiana license for a time …"  Doc, 115, att. 2, p. 12.  Arena

---

[6] There is no evidence in the record to explain what these dates suggest or who made the notation or even why they appear on the Voter Registration.

[7] The transcript of Arena's deposition is attached in its entirety at Doc. 115, att. 2, pp. 1-35.

stated that he has never voted in either Louisiana or in Texas. *Id.* The Voter Registration shows that the "Regis. Date" was April 29, 1999. Doc. 1, att. 1. Arena testified that that date would be consistent with when he changed his license to a Louisiana license.[8] Doc, 115, att. 2, p. 13. The Voter Registration indicates that Arena was registered at the "Motor Vehicle Office" or through the "motor-voter" registration process. Doc. 1, att. 1. Arena testified that he had "zero recollection" of ever specifically signing up to vote. Doc. 115, att. 2, p. 33. Arena's best explanation of why he was registered to vote in Louisiana was that when he changed his driver's license from a Texas license to a Louisiana license he must have registered at that time. *Id.* at 26, 33.

Arena also testified that the address listed on the Voter Registration, 102 El Dorado Court, Lafayette, Louisiana, was a home that he and his ex-wife lived in for only a short period of time when they first moved to Louisiana. *Id.* at 29-30. He stated that they lived at two other addresses after the El Dorado home but he never updated his voter registration. *Id.* at 7. He admitted that "voter registration is something that I haven't kept up with or pursued or used." *Id.* at 26.

Defendants also rely on select testimony from Arena's deposition testimony to support their position. Defendants point out that Arena admitted that his intention was to remain in Louisiana until his children were grown, maintained an apartment in Louisiana after he divorced, had a Louisiana driver's license, had occupational licenses in Louisiana in connection with his employment, and had bank accounts in Louisiana. *Id.* at 6, 28, 60-61, 64-66. This testimony, they assert, proves that Arena has failed to meet his burden of establishing a change of residence as of May 25, 2005.

---

[8] Arena's affidavit states that he moved to Louisiana in 1999. Doc. 105, att. 1, p. 1.

A full reading of the deposition testimony of Arena establishes that although he did state that he intended to remain in Louisiana until his children were grown, he testified that he was moving to Louisiana, the hometown of his ex-wife, in order for her to be near her family and to work on their marriage.  *Id.* at 20.  He specifically stated that he moved there to be near his children and "[b]y no means was that going to be my intentional forever residence."  *Id.* at 22. As for maintaining an apartment in Louisiana after the divorce, Arena stated that he could not recall exactly how long he leased the apartment and, as previously stated, he leased the apartment in order to spend time with his children.  *Id.* at 34, 36.

Arena does admit that he had a Louisiana driver's license and occupational licenses and Louisiana bank accounts which this court notes is fairly typical for an individual who resides in and is employed in any state for any length of time.  This in itself does not preclude the finding that Arena changed his residence to Texas before 2005.

As further support of his allegation of Texas residence Arena submitted various forms of documentary evidence.  He contends that toward the end of 2003 and continuing into 2004 he was living in Texas and running his business Water-Tite Roofing from Benbrook, Texas.  He was working as a subcontractor for Quality Tops Roofing, Inc. roofing homes in the Fort Worth area.  Arena attaches a 1099 tax form for the year 2004 evidencing payments made to Arena by Quality Tops Roofing, Inc. in the amount of $21,404,54 which was sent to "Rick Arena, 1122 John Regan St., Benbrook, TX."  Doc. 105, Att. 1, p. 7.

Arena submits proof of purchasing and registering vehicles in Texas in 2004 and 2005. As an exhibit to his affidavit, Arena attached a "Title Application Receipt" from the Texas Department of Transportation dated February 2, 2004 which shows Arena applied for a title to a 1983 GMC pickup truck and listed his residence as 1122 John Regan, Benbrook, TX.  Doc. 105,

att. 1, p. 8.  Also attached is a "Registration Renewal Receipt" issued by the Texas Department of Transportation which shows Arena renewed the registration on the 1983 GMC truck on November 15, 2004 and listed his residence as 1122 John Regan, Benbrook, Texas.  Doc. 105, att. 1, p. 9.

Arena additionally attaches information from two insurance companies insuring several of his vehicles.  A declaration page issued by State and County Mutual Fire Insurance Company dated January 29, 2004 shows coverage for two vehicles owned by Arena for the period of January 24, 2004 through July 24, 2004.  This policy was issued to Arena at 1122 John Regan, Fort Worth, TX.[9]  Doe. 105, att. 1, p. 10.  A billing statement from Mid-Century Insurance Company of Texas dated January 22, 2005 and a Proof of Liability Insurance card also issued by Mid-Century show coverage from January 22, 2005 through July 22, 2005 and both list Arena's address as 1122 John Regan, Benbrook, Texas.  Doc. 105, att. 1, pp. 11-12.

A 2004 United States Income Tax Return which Arena states was filed in April 2005 lists his address as 1122 John Regan, Benbrook, TX. and a "Schedule C Profit or Loss Form Business" filed in conjunction with the 2004 return lists the address for his business Water-Tite Roofing as 329 Meadowhill Drive, Benbrook, TX.  Doc. 105, att. 1, pp. 13-14.

Correspondence from the Social Security office in Fort Worth, Texas dated December 30, 2004 confirms that Arena applied for a replacement Social Security card and that it would be sent to him at 1122 John Regan, Fort Worth, TX.  Doc. 105, att. 1, p. 15.

Arena attaches correspondence from several sources that were all sent to his address in Benbrook, Texas during 2004 and 2005 including: a notice from State Farm Life Insurance Company dated January 18, 2005 concerning interest on a loan; statements from Rental Service Corporation, Worknet, and Cisco, Inc., relating to his roofing business with dates ranging from

_____

[9] Benbrook, Texas is a suburb of Fort Worth, Texas.  Doc. 115, att. 2, p. 4.

August 29, 2004 to December 27, 2004; and a letter from Household Automotive Finance Corporation dated December 27, 2004 regarding required liability coverage.  Doc. 105, att. 1, pp. 17-22.

Additionally, Arena attaches a total of 12 invoices he sent through his business Water-Tite Roofing to defendant Stevens' Construction dated from May 21, 2004 through August 21, 2004 which show that they were sent from the location of his business, 1521 Timber Creek, Benbrook, TX.  Doc. 105, att. 2.

Finally, Arena attaches a "Certified Abstract Record" from the Texas Department of Public Safety which indicates that while in possession of a Texas driver's license he received a speeding ticket in March of 2004 and in September of 2005.  Doc. 115, att. 1, pp.1-2.  This he argues is consistent with his assertion that he moved back to Texas in late 2003.

Citing to his sworn testimony at trial, Arena points out that in the transcript when he was describing the logistics of the 2004 Fort Polk project, which was the subject matter of this lawsuit, he testified that he was bringing between 30 to 40 employees to Fort Polk from Fort Worth, Texas to start the job.  Doc. 36, pp. 93-94.  Again, he maintains that this is consistent with his current statement that he returned to Texas in late 2003 and began running his roofing business, Water-Tite Roofing.

Defendants contend that Arena has not done enough to overcome the presumption of continued domicile in Louisiana.  They claim that he maintained an apartment in Louisiana following his divorce and was unable to remember if he was still renting it in May of 2005.  Arena admits that he could not remember if he was renting the apartment in May of 2005, however, he does know that he signed a lease on the apartment in 2002 when he was going through his divorce.  Doc. 115, att. 2, p.p. 7-8.  Although he concedes that it was "a long time

-11-

ago" he states that he probably leased it for a year and a half.  *Id.* at p. 9.  If correct, he would not have been leasing the apartment on May 25, 2005.  However, even if he did maintain a lease on this apartment in May 2005, a fact no one has been able to establish, this in and of itself is not determinative of domicile.  As previously noted, no one factor is dispositive of domicile.  The evidence overwhelmingly supports Arena's assertion that he moved to Texas prior to 2005 with the intent to remain there permanently and he has taken significant steps to effectuate his change of domicile to the State of Texas.

Defendants further contend that Arena's testimony that he lived at 1122 John Regan (his parents' home) when he moved back to Texas and the fact that he was receiving mail at that location fail to establish that he was permanently residing in Texas.  They contend that all this shows is that Arena was receiving mail at this parents' house which would not be unusual for an "itinerant roofer."  Doc. 112, p. 5.  They further submit that Arena's home that he currently lives in was not acquired by his mother until 2006, after the lawsuit was filed[10].  Defendants contend that this evidence supports the fact that Arena had not changed his domicile on May 25, 2005.  We disagree.  The documentary evidence produced by Arena dating from as early as January 2004 convinces the court that Arena had moved back and established residency in his hometown of Benbrook, Texas following his divorce with the intent to remain indefinitely.

It is the finding of this court that Arena was a domiciliary of the State of Texas at the time this lawsuit was filed and this court properly exercised jurisdiction over this action because the parties to this action are completely diverse.

---

[10] Defendants attach a "General Warranty Deed with First and Second Vendor's Liens" signed on September 12, 2006 for the house located at 1120 Timberline, Benbrook, Texas owned by Arena's mother, Cherie Arena.  Doc. 112, att. 3, pp. 1-4.

*Conclusion*

For the foregoing reasons, defendants' motion to for a new trial or alternatively motion to dismiss [docs. 62, 96] are hereby **DENIED**.

THUS DONE this 25th day of February, 2014.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE